IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSUMER ADVOCATES RIGHTS ENFORCEMENT SOCIETY, INC. (CARES, INC.), on behalf of California child-support payors; and NICK ARELLANO, individually as a child-support payor and on behalf of all those similarly situated and as guardian ad litem for RYAN ARELLANO, individually as a child supported and on behalf of all those similarly situated,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>STATE OF CALIFORNIA; COUNTY OF MONTEREY; STEPHEN H. KENNEDY; CURTIS L. CHILD; JAMES L. HANSEN; LISA ORTIZ; BERNIE SIMON and DOES 1 through 50, inclusive,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　　　　／ | No. C 05-01026 WHA<br><br><br><br><br><br>**ORDER GRANTING MOTION TO DISMISS** |

**INTRODUCTION**

In this action challenging the administration of child-support payment cases in California under the Temporary Assistance to Needy Families ("TANF") program, defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint. The Court **GRANTS** defendants' motion to dismiss.

**STATEMENT**

Plaintiff Nick Arellano is Ryan Arellano's non-custodial parent and guardian ad litem. He has been obliged to pay child support for Ryan through the Monterey County Department of

1  Child Support Services since November 3, 1993.  His case has been administered pursuant to
2  Title IV-D, 42 U.S.C. 651–669, a cooperative federal-state program designed to ensure the
3  availability of child-support enforcement and paternity-establishment services to states that
4  participate in the TANF program.  As a participant, California receives federal funds and uses
5  them to make monetary payments, including child-support, to financially-needy families.  The
6  state later recovers its contributions from the parents responsible for such obligations.  Under
7  the Act, it cannot claim an amount exceeding the benefits it actually disbursed to the family,
8  however, and any excess payments must be applied to outstanding obligations.  California must
9  also comply with basic federal goals and regulations governing its administration of
10 child-support cases.  Beyond meeting these minimum standards, the state has considerable
11 autonomy in designing its own public-assistance program.

12    Plaintiff Arellano made regular reimbursement and child-support payments to the
13 department pursuant to a court order until September 1997.  Around that time, Ryan's mother
14 requested that his child-support case be closed; she also waived all outstanding obligations he
15 owed.  Beginning in 1998, disputes emerged between plaintiff Arellano and the
16 Monterey County Child Support Division, the local agency that was directly responsible for
17 administering his case.  Specifically, plaintiff Arellano took issue with the division's notices
18 that he owed substantial sums of money and practices of intercepting his tax refunds and
19 levying his bank accounts in order to collect those sums.  He was also aggrieved by the
20 division's failure to provide him with notice or information as to how he could resolve his
21 disputes or a statement regarding his reimbursement account.

22    On February 19, 2005, plaintiff Arellano commenced this action challenging these
23 alleged administrative errors.  He represents a putative class of other parents allegedly subjected
24 to similar errors, his son Ryan and similarly-situated children.  Consumer Advocates Rights
25 Enforcement Society, Inc., the other named plaintiff, is a California non-profit public-benefit
26 organization that aids in the enforcement of rights of families whose support is processed
27 through the county/state child-support system.  Defendants are or were previously involved in
28

managing various aspects of child-support services that allegedly affected or continue to impact the administration of plaintiff Arellano's and the putative class members' child-support cases.

This action accuses defendants of violating both federal and state laws by mismanaging child-support cases in California. Specifically, the complaint alleges: (1) defendants have deprived plaintiffs of property without due process of law, in violation of 42 U.S.C. 1983; (2) defendants have deprived plaintiffs of property without due process of law and infringed on their Fifth and Fourteenth Amendment rights, in violation of 42 U.S.C. 657, by collecting and retaining excess child-support payments; (3) defendants have failed to provide plaintiffs with the requisite notice and due process protections in handling their accounts; (4) defendants Hansen and Ortiz, child-support attorneys for the Monterey County Local Child Support Agency and/or Department of Child Support Services, fraudulently obtained plaintiff Arellano's earnings from his employer; (5) defendants have unlawfully charged interest on undistributed child-support payments; (6) defendants have breached their fiduciary duty to plaintiffs; and (7) defendants' fiduciary duty requires them to provide plaintiffs with an accounting. Plaintiffs request that the Court direct defendants to redress their alleged misconduct.[1]

Defendants now move to dismiss the complaint on the following five grounds: (1) plaintiffs have no private right of action under Title IV-D; (2) the Eleventh Amendment shields them from all claims; (3) many of plaintiffs' claims are barred by the statute of limitations; (4) defendant Child, former director of California's Department of Child Support Services, is entitled to qualified immunity as to any damages claims; and (5) the Court lacks subject-matter jurisdiction over the state claims. Defendants also assert that plaintiff

---

[1] Title 42 U.S.C. 1983 provides in pertinent part that "[e]very person, who under color of . . . [law] subjects or causes to be subjected any citizen of the United States to . . . the deprivation of any privileges or immunities secured by the constitution and laws shall be liable to the party injured in an action at law."

Title 42 U.S.C. 657 provides in pertinent part that "[i]n no event shall the total of the amounts paid to the Federal Government and retained by the State exceed the total of the amounts that have been paid to the family as assistance by the State."

1  Arellano lacks standing to bring the action on behalf of Ryan and that the putative class
2  members lack standing as well.[2]

## ANALYSIS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim is proper if it appears beyond doubt that plaintiff can prove no set of facts to support a claim entitling him to relief.  Dismissal may be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).  Furthermore, all material allegations of the complaint are taken as true and are construed in the light most favorable to the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  If dismissal is granted, plaintiffs are only provided leave to amend if they can cure the complaint's defects. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

### 1. PRIVATE RIGHT OF ACTION.

Defendants contend that plaintiffs have no private right of action against them because the federal laws they allegedly violated do not unambiguously confer upon plaintiffs any individual rights.  Plaintiffs claim to possess a private right of action because the relevant laws benefit them, provide them with clear and enforceable rights and impose binding obligations on defendants that work to their advantage.

The Supreme Court held in *Blessing v. Freestone*, 520 U.S. 329 (1997), that custodial mothers of children eligible to receive child support under Title IV-D lacked a private right of action against a state under Section 1983 to obtain "substantial compliance" with the title.  It based this decision on the recognition that Congress did not intend for the law in question to benefit individual children and custodial parents.  The ruling further identified the following factors as critical to this determination:  (1) whether the right asserted under the statute is so

---

[2] Michael Leavitt, Secretary of the United States Department of Human Health and Services, was also named as a defendant in the complaint.  Mr. Leavitt filed a separate motion to dismiss, arguing that 42 U.S.C. 1983 did not provide plaintiffs with a basis for asserting jurisdiction over him in order to allege violations of federal law because he did not act under color of state law or in conspiracy with a state actor.  Plaintiffs stipulated and agreed to dismiss all claims as to Mr. Leavitt.  As a result, Mr. Leavitt was dismissed and is no longer a defendant in this action.

4

1  "vague and amorphous" that enforcement would strain judicial competence, and (2) whether the
2  provision imposes any binding obligation on the state, *i.e.*, whether the language is mandatory
3  or precatory. *Id.* at 340–41, 343.

4  In *Gonzaga University v. Doe*, 536 U.S. 273 (2002), the Supreme Court clarified
5  *Blessing*'s holdings. The Court ruled that federal funding provisions do not authorize private
6  enforcement by a Section 1983 action unless Congress clearly manifested an unambiguous
7  intent to confer individual rights to seek relief under those provisions. In making this
8  determination, courts should consider the "text and structure" of the statutes at issue to ascertain
9  whether they employ "rights-creating" language that clearly imparts an "*individual* entitlement"
10 and has an "unmistakable focus on the benefitted class." The opinion also stated that Congress
11 likely did not intend to impart such entitlements in cases where: (1) statutes have an
12 "aggregate" focus rather than a focus on whether the needs of any particular person have been
13 satisfied; (2) statutes speak only in terms of institutional policy and practice; (3) a statutory
14 provision references the individual only in the context of describing the type of policy or
15 practice that will trigger a funding prohibition; and (4) a provision allows a state entity to avoid
16 a loss of federal funds through substantial compliance. *Id*. at 286–88.

17 Here, plaintiffs' claims do not allege violations of laws that confer upon them specific,
18 individualized rights. Plaintiffs bring this action under the Title IV-D provisions, which are
19 found in 42 U.S.C. 601–669. The statutory language reveals the legislation's purpose to
20 provide flexibility to states in operating programs that will facilitate the care of needy children
21 in their own homes and encourage two-parent families. Subdivision (b) of Section 601
22 explicitly states that the Title IV-D provisions shall not be interpreted to provide entitlement to
23 "any individual or family." Accordingly, Title IV-D does not provide plaintiffs with
24 enforceable personal rights. Even if the laws have the effect of benefitting them, their failure to
25 qualify as "intended beneficiaries" of the provisions precludes them from maintaining a Section
26 1983 private right of action against defendants. *See Gonzaga*, 536 U.S. at 283.

27 Plaintiffs argue that Sections 608, 654(27), 654b, 657 and 666 provide them with
28 adequate individual entitlements. Section 608 sets forth requirements that state plans must

5

follow and certain prohibitions on their actions.[3]  Section 654(27) requires state agencies administering the state plans to operate state disbursement units and enforce support collections accordingly.[4]  Section 654b obliges state agencies to establish such units in order to collect and disburse child-support payments.  It also delineates the specific procedures the units must follow in order to "ensure prompt disbursement of the custodial parent's share of payment."[5]  Section 657 sets forth rules that govern states' distribution of child-support payments.[6]  Section 666 requires that states pass laws and regulations for collecting support with liens and withholding from income, as well as rules regarding the establishment of paternity.[7]  The language of these statutes is directed towards states — not individuals — for purposes of improving child-support administration and lessening the need for public assistance.  Nothing in

---

[3] This section lists numerous such regulations.  For example, it prohibits states receiving grants under the title from "[using] any part of [their] grant[s] to provide assistance to a family, unless the family includes a minor child who resides with the family . . . or a pregnant individual."  It also provides that a state agency responsible for administering the state plan that determines that an individual is not cooperating with the state in its administration efforts must "deduct from the assistance that would otherwise be provided to the family of the individual . . . an amount equal to not less than 25 percent of the amount of such assistance" and "may deny the family any assistance under the State program."

[4] Specifically, this section directs the state agency to "operate a state disbursement unit in accordance with" section 654b of the title and "have sufficient State staff" and possibly contractors "reporting directly to the state agency to–(i) monitor and enforce support obligations through the unit in cases being enforced by the State."

[5] Section 654b provides in pertinent part:

> [T]he State agency must establish and operate a unit (which shall be known as the "State disbursement unit") for the collection and disbursement of payments under support orders. . . . The State disbursement unit shall be operated . . . directly by the State agency. . . . [It] shall use automated procedures [and] electronic processes . . . for the collection of support payments . . . [and] may delay the distribution of collections toward arrearage until the resolution of any timely appeal with respect to such arrearage.

[6] In particular, it provides that "[i]n the case of a family receiving assistance from the State, the State shall–(A) pay to the Federal Government the Federal Share of the amount so collected; and (B) retain, or distribute to the family, the State share of the amount so collected" and in the case of a family formerly receiving State assistance, "[t]o the extent that the amount so collected exceeds the amount required to be paid to the family for the month in which collected, the State shall distribute the amount so collected" according to a series of guidelines the statute goes on to delineate.

[7] This section establishes that "each State must have in effect laws requiring the use of [various] procedures . . . to increase the effectiveness of the program which the State administers."  The provision then goes on to list numerous procedures and regulations that are intended to fulfill this goal.

6

the statutes unambiguously confers rights upon plaintiffs that they may enforce. As such, plaintiffs do not possess individual rights to enforce states' alleged violations of Title IV-D's provisions. *See Sanchez v. Johnson*, 416 F.3d 1051, 1057 (9th Cir. 2005) (language in statute must contain "individually focused rights creating language").

Plaintiffs also aver violations of notice and due process. In particular, they maintain that defendants violate these rights in connection with their levies against plaintiff Arellano's bank account and interceptions of his tax returns in May, June and July 2001, as well as June 2002 (Compl. ¶¶ 47, 49, 51). Plaintiffs request that the Court take judicial notice of the pleadings, orders and evidence in *Barnes v. Healy*, a class-action lawsuit in the United States District Court for the Eastern District of California that plaintiffs maintain is nearly identical to the instant action. In *Barnes*, Judge Shubb found due process violations for the state defendants' failure to provide adequate notice and hearing procedures in collecting and distributing child-support payments. Plaintiffs point out that the Ninth Circuit upheld Judge Shubb's ruling. *See Barnes v. Healy*, 980 F.2d 572 (9th Cir. 1992).[8] They assert that the *Barnes* ruling compels the Court to find a private right of action in this case as well.

Trouble is, plaintiffs possess a remedy for these claimed violations under state law. Various California statutory provisions ensure that obligors are apprised of any state actions to unilaterally collect child-support obligations.[9] The state provides a procedure for challenging levies on bank accounts. Cal. Code of Civ. Proc. § 703.510; *see also* § 689.030. There is also a specific complaint-resolution process available to anyone aggrieved by the child-support process. 22 Cal. Code Regs. §§ 120100–120222. These regulations permit challenges for

---

[8] Plaintiffs' counsel filed a supplemental brief regarding the Ninth Circuit ruling in *Barnes* on December 12, 2005. Just four days earlier, plaintiffs' counsel was specifically instructed not to file any additional pleadings at the hearing concerning defendants' motion to dismiss. While the Court reviewed this brief, it disapproves of plaintiffs' submission of it.

[9] 22 Cal. Code Regs. § 116140(e) requires local child-support agencies to provide written notice to obligor before reporting any obligations to the Department of Child Support Services and allow obligor 30 days to contest the accuracy of the information. Cal. Fam. Code § 17522 requires the agencies to provide obligors notice and an opportunity to contest alleged obligations prior to levying their accounts or property. Cal. Fam. Code § 5246 and Cal. Code of Civ. Proc. § 706.30 impose similar notice and hearing requirements with regard to enforcement of orders by withholding obligors' income from their employers.

7

1  accounting disputes with the local child-support agency regarding obligations. *Id.*
2  § 120201(a)(1)(A) & (C).  There are no analogous federal provisions securing plaintiffs' such
3  safeguards.  Plaintiffs therefore should have sought appropriate remedies for the alleged notice
4  and due process violations in a state action.

5  Moreover, the *Barnes* decision does not govern the instant case.  In *Barnes*, the
6  Ninth Circuit held that plaintiffs had a private right of action to allege state violations of due
7  process based on a specific federal statutory provision, 45 C.F.R. 302.54.  That provision set
8  forth state plan requirements that explicitly afforded individuals annual notice as to the
9  collection and distribution of their payments.  *See Barnes*, 980 F.2d at 575.  The court agreed
10 with plaintiffs that the provision prevented plaintiffs from effectively evaluating error and
11 availing themselves of an administrative adjudicatory process.  *Id.* at 579–81.  Following the
12 decision, in 1993, the statute's notice provisions were revised to ensure more meaningful notice.
13 The instant action differs considerably.  Here, plaintiffs are not alleging that they were deprived
14 of meaningful notice to which they are entitled under a specific federal statute governing
15 child-support administration.  They do not assert violations of particular federally-conferred
16 rights protecting their property interests as participants in the TANF program.  As explained
17 above, the only federal statutes that they do allege were violated govern states' management of
18 child-support cases.  Under the recent United States Supreme Court rulings in *Blessing* and
19 *Gonzaga*, these provisions cannot be construed to establish any individual rights.  As such, the
20 *Barnes* decision fails to provide plaintiffs' with a private right of action to aver notice and due
21 process deprivations in federal court.

22 Furthermore, the complaint fails to delineate which class members were denied notice
23 and due process.  It is also devoid of any allegations as to how they were so deprived.  These
24 deficiencies preclude this Court from considering their claimed violations in the aggregate, as
25 plaintiffs have presented them.  Put differently, the state statutes provide due process through
26 various notices and hearings.  If plaintiff Arellano failed to get a notice (which is not at all
27 clear), it was an aberration.  That does not mean others in the class were inadvertently denied
28 notice.  And, anyone denied notice on an ad hoc basis can seek remedies in state court.

Finally, plaintiff Arellano's claimed notice and due process violations are barred by the statute of limitations. A personal injury/civil rights action such as this must be commenced within two years of the date the liability allegedly accrued. Cal. Code of Civ. Proc. § 331.5.[10] A cause of action accrues when a plaintiff knew or should have known of the injury that forms the basis of the action. *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996). The acts underlying plaintiff Arellano's alleged notice and due process deprivations occurred in May, June and July of 2001 and in June of 2002. He knew in 1998 that he disagreed with the county's figures about child-support obligations it claimed he owed. He knew in 2001 and 2002 that his tax refunds and bank account were being used to cover those obligations (Compl. ¶¶ 47–55). Yet, plaintiffs waited until February 2005 to commence this action. Plaintiff Arellano's purported notice and due process violations are therefore untimely.

Plaintiffs have not alleged a federal claim. Accordingly, plaintiffs' complaint is **DISMISSED** with respect to the federal claims. Defendants' remaining grounds for dismissal of these claims therefore need not be addressed.

**2.    FURTHER STATE-LAW CLAIMS.**

In light of plaintiffs' lack of a federal claim, this Court declines to exercise jurisdiction over plaintiffs' state-law claims pursuant to Title 28 U.S.C. 1367(c)(3).

Title 28 U.S.C. 1367(c)(3) authorizes the Court to decline to exercise supplemental jurisdiction over a state claim if it has dismissed all claims over which it has original jurisdiction. Declining jurisdiction in circumstances like this serves the objectives of economy, convenience and fairness to the parties, and comity. *See Executive Software N. Am., Inc. v. United States Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994). The Supreme Court has acknowledged that "[i]n the usual case in which all federal-law claims are eliminated before trial," these factors "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 & n.7 (1998); *see also*

---

[10] The Court adopts the state limitations period for the instant federal claims. It is settled practice to do so in cases such as this, in which there is no governing federal statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 266 (1985) (federal court should adopt state limitations period given that the Civil Rights Act does not contain a limitations provision).

*San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478 (9th Cir. 1998) (district court not required to provide explanation when declining jurisdiction under Section 1367(c)).

      Here, dismissal of the state-law claims is proper. Since the federal claims are dismissed, it is unnecessary for this Court to decide the remaining state-law claims. In addition, there will be no duplication of effort to remit the state claims to state court. This Court has not invested substantial time in supervising this case. On the other hand, there is currently a pending action in state court between the state and county defendants and plaintiff Arellano concerning this matter. As such, the state court is in a much better position to address the state-law claims in the first instance. Plaintiffs may either bring a separate action raising these claims or inject them into the pending state action with little inconvenience. Either of these options would constitute a fair and efficient manner by which plaintiffs could raise these causes of action. This order thus **DISMISSES** plaintiffs' state-law claims.

## CONCLUSION

      For the reasons stated above, plaintiffs' federal claims and state causes of action are **DISMISSED**. Leave to amend is deemed as futile. Judgment will be entered.

      **IT IS SO ORDERED.**

Dated: December 16, 2005.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE